1  BAUM LAW CORPORATION
   DAVID M. BAUM  (SBN 214571)
2  ABRAHAM R. WAGNER (SBN 86682)
   1875 Century Park East, Suite 700
3  Los Angeles, California 90067
   Telephone:  (310) 552-9100
4  Facsimile:  (310) 552-9101
   E-Mail: David@DBaumLaw.com
5
   Attorneys for Plaintiff, DaVINCI AIRCRAFT, INC.
6

7              UNITED STATES DISTRICT COURT FOR

8             THE CENTRAL DISTRICT OF CALIFORNIA

9                     WESTERN DIVISION

10

11  DaVINCI AIRCRAFT, INC.,            )   Civil Action File No.: 2:16-CV-5864
                                       )
12              Plaintiff,             )   COMPLAINT FOR DAMAGES:
                                       )
13              vs.                    )   1)  FRAUD;
                                       )
14  UNITED STATES OF AMERICA; MICHAEL  )   2)  NEGLIGENT
    CHRISTMAS, an individual; RODNEY   )       MISREPRESENTATION;
15  LEWIS, an individual; and DOES 1 Through )
    10, Inclusive,                     )   3)  CONSPIRACY;
16                                     )
                Defendants.            )   4)  IMPLIED CONTRACT;
17                                     )
                                       )   5)  CONVERSION.
18                                     )
                                       )
19                                     )   DEMAND FOR JURY TRIAL
                                       )
20  _____ )

21

22       Plaintiff, DaVinci Aircraft, Inc. ("DaVinci Aircraft" or "DaVinci") for its Complaint against

23  Defendants United States of America; Michael Christmas ("Christmas"), Rodney Lewis

24  ("Lewis"), and Does 1 through 10, inclusive (collectively "Defendants"), as those claims form

25  part of the same case or controversy, allege as follows:

26

27                     **NATURE OF THE CASE**

28       This action arises out of a criminal enterprise and conspiracy on the part of Defendants,

1   agents of the United States Air Force, to obtain 10 JASSM GPS Antennae without compensation

2   to the legal owner, Plaintiff, by fraudulently inducing and compelling Plaintiff, under threat of

3   criminal prosecution pursuant to 18 U.S.C. 793 (the Espionage Act), to surrender the JASSM

4   Antennae.  Plaintiff purchased the JASSM Antennae from BPB Surplus, who purchased them

5   from Avatar Unlimited as part of a bulk sale of surplus parts authorized by the Air Force for sale

6   by Lockheed Martin to Avatar Unlimited in or about March 2013.

7       When Congress enacted 18 U.S.C. 783 it intended for it to be applied to actual cases of

8   espionage and serious misuse of national security information.  It was never intended to be used

9   an alternative to legitimate procurement methods or a means by which federal officials could act

10  under color of law to seize the legitimate property of the rightful owner when they were unable to

11  conclude a contractual agreement.

12

13              **JURISDICTION AND VENUE**

14      1.   This action is brought pursuant to Federal Tort Claims Act, 28 U.S.C. §§ 2671, 1331

15  and 1346(b), and the Fourth and Fifth Amendments to the United States Constitution.

16      2.   On August 18, 2015, Plaintiff DaVinci Aircraft, Inc. submitted an Administrative Claim

17  (Form 95) for the claim set forth below to the Dept. of the Air Force, Office of Special

18  Investigations, Eglin AFB, Florida, and to the Dept. of the Army, Claims Div., Office of Staff

19  Judge Advocate, Ft. Stewart, GA. Joint Base Andrews, MD. (See **Exhibits I, K**)

20      3.   Six months having elapsed since written notice of the claim was presented to the

21  appropriate government agency, and the claim having not settled or denied, all conditions

22  precedent to a Federal Tort Claims Act have been met. 28 U.S.C. §2675(a).

23      4.   Venue is properly within this District under 28 U.S.C. §1402(b) as the acts complained

24  of occurred in the County of Los Angeles, Central District of California.

25

26              **PARTIES**

27      5.   Plaintiff DaVinci Aircraft, Inc. (hereinafter "DaVinci") is and has been at all times

28  relevant to this action a corporation organized and existing under and by virtue of the laws of the

1  State of California, doing business in County of Los Angeles, State of California.

2      6.   Plaintiff DaVinci operates a business purchasing and selling new and serviceable (used)

3  surplus parts in the aviation and aerospace industries.  These parts are regularly offered for sale

4  by the manufacturer or intermediary wholesaler at a significant discount as part of a bulk or

5  salvage sale.  DaVinci's business involves purchase of these surplus parts from manufacturers or

6  distributors, and warehousing those parts until a sale can be made with a buyer in need of that

7  particular part.

8      7.   Although this case does not involve the sale or export of Arms, DaVinci is in

9  compliance with ITAR (International Traffic in Arms Regulations), and it is DaVinci's policy to

10  ensure compliance with U.S. Laws such as the Arms Export Control Act (AECA), International

11  Traffic in Arms Regulations (ITAR Part 122), and Export Administration Regulations (EAR).

12      8.   The United States of America ("United States") is an appropriate defendant under the

13  Federal Tort Claims Act ( 28 U.S.C. § 2671, et seq).

14      9.   Defendant Michael Christmas, SA, DAFC, ("Christmas") is and has been at all times

15  relevant to this action a citizen of the United States and an individual sued in his official capacity

16  as Special Agent in Charge, Air Force Office of Special Investigations, Eglin AFB, Florida.

17      10.  Defendant Rodney Lewis, Capt. USAF, ("Lewis") is and has been at all times relevant

18  to this action a citizen of the United States and an individual sued in his official capacity as

19  Contracting Officer for the Air Force, AFLCMC/EBJK, Eglin AFB, Florida.

20      11.  The true names and capacities, whether individual, corporate, associate, agent or

21  otherwise of Defendants fictitiously named herein as Does 1 through 10, inclusive, are unknown

22  to Plaintiffs, who, therefore sues said defendants by such fictitious names.  Plaintiffs are

23  informed and believe, and thereon allege, that each of the Defendants designated by such

24  fictitious names was intentionally, negligently, recklessly and/or unlawfully responsible in some

25  manner for the events and happenings referred to herein, and caused damages to Plaintiffs as

26  herein alleged.  Plaintiffs will seek leave to amend this Complaint to state the true names and

27  capacities of the fictitiously named Defendants when they are ascertained.  Each of the

28  fictitiously named Defendants is alleged to be in some way legally responsible for the damages

suffered by Plaintiffs.  The term "Defendants", as used herein, shall include each and all of said fictitiously named Defendants.

12.   Plaintiffs are informed and believe and thereon allege that at the time and places herein mentioned, Defendants UNITED STATES OF AMERICA, Michael Christmas, Rodney Lewis, and Does 1 through 10, inclusive, were the agents and employees of each and every other Defendant, and of each other, and in doing all acts herein alleged, were acting within the course and scope of such agency and employment, with the permission, consent and knowledge of the other Defendants.

## FACTS PERTINENT TO ALL CAUSES OF ACTION

13.   Plaintiff is informed, believes and thereupon alleges that on or about March 2013, Lockheed Martin, at the request of Kay Kooler, PLCO, Air Force Defense Contract Management Agency, offered for sale ten (10) JASSM GPS antennae originally manufactured by Ball Aerospace.

14.   Plaintiff is informed, believes and thereupon alleges that the 10 JASSM GPS antennae (hereinafter collectively referred to as the "JASSM Antennae") did not require demilitarization and were authorized for public sale, excluding export.

15.   Plaintiff is informed, believes and thereupon alleges that on or about March 2013, the 10 JASSM Antennae were purchased by Avatar Unlimited from Lockheed Martin as part of a bulk sale of surplus parts.

16.   Plaintiff is informed, believes and thereupon alleges that on or about June 2013, Avatar Unlimited sold the 10 JASSM Antennae to BPB Surplus for a sum of $3,500.

17.   On or about August 1, 2013, Plaintiff DaVinci purchased the 10 JASSM Antennae from BPB Surplus for the sum of $3,000.  A true and correct copy of the purchase invoice from BPB Surplus to DaVinci is attached hereto as **Exhibit "A"**, and incorporated herein by reference.

18.   From approximately August 2013, Plaintiff DaVinci advertised the 10 JASSM Antennae for sale on the surplus parts market at an asking price of approximately $125,000 for each of the Antennae. Plaintiff DaVinci advertised the 10 JASSM Antennae for sale on the

surplus parts market using parts listing services, including NSN-Now and ILSmart.  Examples of listings by DaVinci advertising for sale the JASSM Antennae on NSN-Now and ILSmart parts listing services are attached hereto, marked collectively as **Exhibit "B"**, and incorporated herein by reference.

19.  On September 17, 2013, at approximately 11:30 hours, Special Agent In Charge Laura Voyatzis, U.S. Air Force Office of Special Investigations, accompanied by Special Agents Lenora Madison, John Drapalik, and David Givernero, arrived at DaVinci's business office located in Van Nuys, California.  Special Agent Voyatzis stated that their purpose was to inspect and discuss the 10 JASSM Antennae in DaVinci's possession.

20.  After inspecting the JASSM Antennae, Special Agent in Charge Voyatzis demanded that DaVinci surrender all ten JASSM Antennae, without any legal warrant, court order, or paperwork of any kind.

21.  Plaintiff DaVinci's, upon advice of counsel Bob Ross, who was present, informed the Special Agents that they had no legal grounds for taking the antennae, and DaVinci refused to surrender the JASSM Antennae to the Special Agents.

22.  At the same time and place, the Special Agents asked DaVinci for a quotation of purchase price, and were informed that the asking price for the JASSM Antennae was $125,000 each.  The Special Agents left without taking further action.

23.  On April 21, 2014, responding to a request from Eglin AFB, DaVinci provided a price Quotation for sale of the 10 JASSM Antennae in the amount of $75,000 each.   A copy of the Quotation from DaVinci dated April 21, 2014 is attached hereto as **Exhibit "C"** and incorporated herein by reference.

24.  On June 2, 2014, at approximately 2:37 p.m., Defendant Rodney Lewis, Capt., USAF, in his capacity as Contracting Officer for the United States Air Force, sent an email to Mr. Niemans in the sales department at DaVinci, thanking him for submitting the Quotation for the 10 JASSM Antennae dated Apr. 21, 2014, stating that he was interested in discussing the matter, and requesting a return call from DaVinci.

25.  On June 2, 2014, at approximately 4:52 p.m., Defendant Lewis sent another email to

DaVinci extending an offer to purchase the 10 JASSM Antennae in DaVinci's possession for the sum of $7,359. Lewis' email states that his offer price is based upon the price DaVinci originally paid for the purchase of the lot of military equipment from DCMA.

26. On June 4, 2014, at 2:37 p.m., Defendant Lewis sent a follow up email to Leonardo Parra, owner of DaVinci, stating that Lewis had been assigned to purchase the JASSM GPS antennae from DaVinci. At approximately 3:44 p.m., DaVinci responded by email to Defendant Lewis rejecting his offer, and stating that DaVinci's quoted price for the JASSM Antennae of $750,000 was a 40% discount from original asking price. At approximately 5:42 p.m., Defendant Lewis replied by email that "the government was unwilling and unable to accept that price." Defendant Lewis' email states "I encourage you to propose a more reasonable price so we both can benefit." Copies of the emails sent on June 2 and June 4, 2014 are attached hereto, marked collectively as **Exhibit "D"** and incorporated herein by reference.

27. On or about June 11, 2014, DaVinci received a telephone call from Capt. Rodney Lewis, Department of the Air Force. Capt. Lewis stated that the Air Force was in "urgent need" of the JASSM Antennae and asked DaVinci for a price quotation. DaVinci responded with a verbal price quotation of $125,000 each, for the 10 JASSM Antennae owned by DaVinci. Capt. Lewis replied that the price quoted by DaVinci was too high, and that the Antennae were not worth that amount of money as they were "no good."

28. Thereafter, also on June 11, 2014, Capt. Lewis sent an email to DaVinci requesting a written price quotation for the 10 JASSM Antennae.

29. On June 11, 2014, in response to Capt. Lewis' email request, DaVinci prepared and sent a written Quotation to Eglin AFB, listing the full purchase price for the 10 JASSM Antennae at $125,000,000, and offering a 52% discount for a final price of $600,000. A true and correct copy of the Quotation dated June 11, 2014 is attached hereto as **Exhibit "E"** and incorporated herein by this reference.

30. DaVinci received no response to the written Quotation dated June 11, 2014.

31. On September 30, 2014, at approximately 09:15 hours, Special Agent Joel S. Russell, Office of Special Investigations, accompanied by two Air Force Officers, arrived at DaVinci's

1   business location in Van Nuys, California, and demanded that DaVinci surrender the 10 JASSM

2   Antennae, under compulsion of law.  Special Agent Russell stated that the Air Force was

3   authorized to and intended to take possession of 10 JASSM GPS Antennae.

4       32.  On September 30, 2014, at the same time and place, Special Agent Russell presented

5   DaVinci with a letter signed by Dept. of the Air Force, Office of Special Investigations, Special

6   Agent in Charge, Michael Christmas, SA, DAFC, dated 23 Sept. 2014, purportedly authorizing

7   the Air Force to take possession of the JASSM antennae.  The letter specifically acknowledges

8   that "delivery of the said items by Leonardo Parra and DaVinci Aircraft is made under

9   compulsion of law pursuant to 18 USC 793(d) and is made without prejudice to any claims by

10   Leonardo Parra and/or DaVinci Aircraft for their fair market value." A true and correct copy of

11   Special Agent Christmas' letter is attached hereto as **Exhibit "F"**, and incorporated herein by

12   reference.

13       33.  On September 30, 2014, pursuant to the demands and threats made by Special Agent

14   Russell to provide the JASSM Antennae under compulsion of law pursuant to 18 USC 793 (d),

15   including the threat of criminal prosecution for any failure to comply, Plaintiff DaVinci

16   surrendered the 10 JASSM Antennae to Special Agent Russell.  Agent Russell signed a written

17   acknowledgment of his receipt of the 10 JASSM Antennae seized.  A true and correct copy of the

18   "Receipt For Items Taken Under Compulsion" is attached hereto as **Exhibit "G"** and

19   incorporated herein by reference.

20       34.  On or about September 30, 2014, Plaintiff DaVinci delivered to Special Agent Russell

21   an Invoice for the seized JASSM Antennae in the amount of $1,250,000, the full originally

22   quoted contract price, without discount.  A true and correct copy of the Invoice is attached hereto

23   as **Exhibit "H"**, and incorporated herein by reference.

24       35.  On March 12, 2015, Plaintiff's counsel, David M. Baum, sent a letter to the Dept. of the

25   Air Force, Office of Special Investigations, Eglin AFB, notifying the Air Force of Plaintiff's

26   claim under the FTCA, and requesting the filing of the attached Form 95, Administrative Claim

27   for Damages. A true and correct copy of Mr. Baum's letter is attached hereto as **Exhibit "I"** and

28   incorporated herein by reference.

36. On or about July 20, 2015, Plaintiff's counsel received a letter dated July 14, 2015, from Ms. Sipp, Tort Litigation Civil Litigator, Claims Division, Office of the Staff Judge Advocate, Dept. of the Army, Ft. Stewart, Georgia, requesting that Plaintiff re-file Form 95 with original signature of Claimant rather than counsel, and also file a completed "Authority to File Claim." Ms. Sipp requested that these documents be sent to the Claims Division, Office of the Staff Judge Advocate to process the claim. A true and correct copy of Ms. Sipp's letter is attached hereto as **Exhibit "J"** and incorporated herein by reference.

37. On August 18, 2015, pursuant to the letter from Ms. Sipp, DaVinci submitted Plaintiff's duly executed Form 95, "Authority to File Claim," and attachments, to the Dept. of the Army, Claims Div., Office of Staff Judge Advocate, Ft. Stewart, GA. A copy of Mr. Baum's letter of August 18, 2015, with Form 95, "Authority to File Claim", and attachments was also sent to the Dept. of the Air Force, Office of Special Investigations, Eglin AFB, Florida. A true and correct copy of Mr. Baum's cover letter with Form 95 and Authority to File Claim is attached hereto, marked collectively as **Exhibit "K"** and incorporated herein by reference.

38. The Dept. of the Army, Office of the Staff Judge Advocate's letter dated August 20, 2015, acknowledged receipt of Plaintiff's DaVinci's Federal Tort Claim against the United States Government and enclosed a filed and date stamped copy of Plaintiff's Form 95. A true and correct copy of the August 20, 2015 letter is attached hereto as **Exhibit "L"** and incorporated herein by reference.

## FIRST CLAIM FOR RELIEF

### FRAUD

(Against All Defendants)

39. Plaintiff re-alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 38, inclusive.

40. As set forth above, at all times relevant to this action, and specifically from approximately September 2013 through October, 2014, Defendants, and each of them, knowingly made false representations of material facts to Plaintiff with the specific intent to

1   induce Plaintiff to surrender its property to Defendants without proper compensation to Plaintiff.

2       41.   Defendant United States, Christmas, and Lewis, Does 1 through 10, and each of them,

3   knowingly made false and fraudulent representations of material facts to Plaintiff, including but

4   not limited to, that the Air Force was authorized to take possession of the JASSM Antennae

5   under compulsion of law pursuant to 18 USC 793(d), that the items to be seized contained

6   "information relating to the national defense", and that the JASSM Antennae were "no good" and

7   not worth the price DaVinci was asking.

8       42.   When Defendants, and each of them, made the representations and committed the acts

9   herein alleged, Defendants knew the statements and representations to be false, with no

10  reasonable ground for believing them to be true, and committed the acts herein complained of

11  with the intent to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to act in a

12  particular manner, in which Plaintiff did, all to Plaintiffs' detriment and harm.

13      43.   Plaintiff, at the time these representations were made by Defendants and at the time

14  Plaintiff took the actions herein alleged, was ignorant of the falsity of Defendants'

15  representations and believed them to be true.  Plaintiff justifiably and reasonably relied on

16  Defendants' representations, and was thereby induced to, and on or about September 30, 2014,

17  did surrender and deliver to Defendants the 10 JASSM Antennae in DaVinci's possession.

18      44.   Had Plaintiff known the actual and true facts it would not have agreed to surrender the

19  10 JASSM Antennae to Defendants.

20      45.   DaVinci's lawful possession of the JASSM Antennae is undisputed and was

21  acknowledged in writing by the Dept. of the Air Force, Office of Special Investigations, Special

22  Agent in Charge Michael Christmas, SA, DAFC, in his letter authorizing the Air Force to take

23  possession of the antennae.  The letter dated 23 Sept. 2014 provides that "delivery of the said

24  items by Leonardo Parra and DaVinci Aircraft is made under compulsion of law pursuant to 18

25  USC 793(d) and is made without prejudice to any claims by Leonardo Parra and/or DaVinci

26  Aircraft for their fair market value." (See **Exhibit "F"**)

27      46.   As a direct and proximate result, Plaintiff has been generally and specially damaged in a

28  sum in excess of $1,250,000, plus interest in accordance with applicable law.

47.   The aforementioned conduct of Defendants, and each of them, was intentional and done for the purpose of depriving Plaintiff of property and/or legal rights or otherwise causing injury, and was done with malice and/or in conscious disregard of Plaintiff's rights, and with the intent to defraud, injure and damage Plaintiff, so as to justify an award of exemplary and punitive damages.

## SECOND CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION

(Against All Defendants)

48.   Plaintiff re-alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 47, inclusive.

49.   Defendants United States, Christmas, Lewis, Does 1 through 10, inclusive, and each of them, falsely represented to Plaintiff that the government was "authorized to take possession of the JASSM Antennae under compulsion of law pursuant to 18 USC 793(d)" and that the items contained "information relating to the national defense."  Defendants, and each of them, also falsely represented to Plaintiff that the JASSM Antennae were "no good" and not worth the price DaVinci was asking.

50.   When Defendants, and each of them, made the representations and committed the acts here above alleged, Defendants had no reasonable ground for believing them to be true, and committed the acts herein complained of with wanton and reckless disregard for the rights of Plaintiff, and intending to induce Plaintiff to act in a particular manner, in which Plaintiff did, all to Plaintiff's detriment and harm.

51.   At the time Defendants United States, Christmas, Lewis, Does 1 through 10, inclusive, and each of them, made the aforementioned representations and at the time plaintiff took the actions herein alleged, Plaintiff was ignorant of the falsity of defendants' representations and believed them to be true.

52.   Plaintiff DaVinci justifiably and reasonably relied upon the false representations made by Defendants, and each of them, and based thereon, on September 30, 2014, Plaintiff DaVinci

1   delivered to Special Agent Russell, under compulsion of law, the 10 JASSM Antennae in its

2   possession.

3      53.   Had Plaintiff known the actual facts it would not have agreed to surrender the 10

4   JASSM Antennae.

5      54.   As a direct and proximate result of Defendants Christmas, Lewis, DOES 1 through 10,

6   inclusive, and each of their, negligent misrepresentations and deceit, as here above alleged,

7   Plaintiff has been generally and specially damaged in a sum in excess of $1,250,000, plus interest

8   in accordance with applicable law.

9

10                          **THIRD CLAIM FOR RELIEF**

11                                  **CONSPIRACY**

12                              (Against All Defendants)

13     55.   Plaintiff re-alleges and incorporates herein by this reference each and every allegation

14   set forth in Paragraphs 1 through 54, inclusive.

15     56.   As set forth above, from approximately September 2013 through October 2014,

16   Defendants, and each of them, conspired to fraudulently and wrongfully induce and coerce

17   Plaintiff to surrender the 10 JASSM Antennae to the Air Force, and to dispossess Plaintiff of its

18   legal property without due process and without just and proper compensation to Plaintiff.

19     57.   Plaintiff is informed, believes and thereupon alleges that Defendants United States,

20   Christmas, Lewis, Does 1-10, and each of them, knowingly conspired to induce Plaintiff to

21   surrender its property without due process, and without just and proper compensation to Plaintiff,

22   by falsely alleging, inter alia, that the government was authorized to seize the items under

23   compulsion of law pursuant to 18 U.S.C. 793(d).

24     58.   Defendants United States, Christmas, Lewis, Does 1-10, and each of them, in

25   furtherance of the conspiracy, knowingly prepared documents and made false and fraudulent

26   representations to Plaintiff that the government was authorized to take possession of the JASSM

27   Antennae under compulsion of law pursuant to 18 USC 793(d).

28     59.   Defendants United States, Christmas, Lewis, Does 1-10, and each of them, in

furtherance of the conspiracy, knowingly made false and fraudulent representations to Plaintiff that the JASSM Antennae contained "information relating to the national defense" and also that the JASSM Antennae were "no good" and not worth the price DaVinci was asking.

60. Plaintiff DaVinci reasonably relied upon the false representations made by Defendants.

61. On or about September 30, 2014, in reliance upon on the false representations of Defendants, and each of them, and under the perceived threat of criminal prosecution pursuant to 18 USC 793(D), Plaintiff surrendered the 10 JASSM Antennae in its possession to Special Agent Russell.

62. When Defendants United States, Christmas, Lewis, Does 1-10, and each of them, conspired to commit the acts alleged herein, Defendants knew the acts to be wrongful, including false representations, with no reasonable ground for believing them to be true, and committed the acts, herein complained of, with the intent to defraud and deceive Plaintiff, all to Plaintiff's detriment and harm.

63. At all times relevant to this action, Plaintiff was ignorant of the falsity of Defendants' representations and believed them to be true. Plaintiff justifiably relied on the representations and statements made by the Defendants, and each of them, in surrendering, under the perceived threat of criminal prosecution, the 10 JASSM Antennae in its possession.

64. Had Plaintiff known the actual facts it would not have agreed to surrender the 10 JASSM Antennae.

65. As a direct and proximate result of Defendants United States, Christmas, Lewis, Does 1-10, and each of their, conspiracy to commit fraud, etc., as here above alleged, Plaintiff has been generally and specially damaged in a sum in excess of $1,250,000, plus interest in accordance with applicable law.

66. The aforementioned conduct of Defendants United States, Christmas, Lewis, Does 1-10, and each of them, was intentional and done for the purpose of depriving Plaintiff of property and/or legal rights or otherwise causing injury, and was done with malice and/or in conscious disregard of Plaintiff's rights, and with the intent to defraud, injure and damage Plaintiff, so as to justify an award of exemplary and punitive damages.

**FOURTH CLAIM FOR RELIEF**

**IMPLIED CONTRACT**

[California Civil Code §§ 1619–1621]

(Against All Defendants)

67.   Plaintiff re-alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 66, inclusive.

68.   California Civil Code §§ 1619–1621 together provide as follows: "A contract is either express or implied. An express contract is one, the terms of which are stated in words. An implied contract is one, the existence and terms of which are manifested by conduct."

69.   Section 19(2) of the Restatement Second of Contracts provides: "The conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." "Unlike the 'quasi-contractual' quantum meruit theory which operates without an actual agreement of the parties, an implied-in-fact contract entails an actual contract, but one manifested in conduct rather than expressed in words." (Maglica v. Maglica (1998) 66 Cal.App.4th 442, 455 [78 Cal.Rptr.2d 101].)   California Civil Jury Instructions, #305, provides: "Contracts can be created by the conduct of the parties, without spoken or written words. Contracts created by conduct are just as valid as contracts formed with words. Conduct will create a contract if the conduct of both parties is intentional and each knows, or has reason to know, that the other party will interpret the conduct as an agreement to enter into a contract."

70.   As herein alleged, at all time relevant to this action, Plaintiff DaVinci was the legal owner of 10 JASSM Antennae.

71.   Starting in approximately August 2013, and continuing through approximately September 2014, Plaintiff DaVinci advertised the 10 JASSM Antennae for sale on the surplus parts market at an asking price of approximately $125,000 for each Antennae.  Examples of the NSN-Now and ILSmart listings for the JASSM Antennae are attached hereto as **Exhibit "B".**

72.   On September 17, 2013, representatives of the United States Air Force were granted access by DaVinci for inspection of the 10 JASSM antennae in DaVinci's possession.

73.  On April 21, 2014, DaVinci provided a price quotation to Defendants for sale of the 10 JASSM Antennae, in the amount of $750,000.   (**Exhibit "C"**)

74.  On June 2, 2014, Defendant Lewis in his capacity as Contracting Officer for the United States Air Force, sent an email communication to DaVinci regarding the price quotation, stating that he was interested in discussing the matter, and requesting a return call from DaVinci.

75.  On June 2, 2014, Defendant Lewis sent an email to DaVinci extending an offer to purchase the 10 JASSM Antennae in DaVinci's possession for the sum of $7,359.

76.  On June 4, 2014, Defendant Lewis sent a follow up email to DaVinci, stating that Lewis had been assigned to purchase the JASSM GPS antennae.  DaVinci responded by email to Lewis rejecting his June 2nd offer, and affirming that DaVinci's asking price for the JASSM Antennae was $75,000 each, which represented a 40% discount from the original price.  Defendant Lewis replied by email that "the government was unwilling and unable to accept that price" (**Exhibit "D"**)

77.  On or about June 11, 2014, Capt. Lewis verbally stated to DaVinci that the Air Force was in "urgent need" of the JASSM Antennae and asked DaVinci for another price quotation. DaVinci responded with a verbal price quotation of $125,000 each.  Capt. Lewis replied that the price quoted by DaVinci was too high, and that the Antennae were "no good" and not worth that amount of money.

78.  On June 11, 2014, Capt. Lewis sent an email to DaVinci requesting a written price quotation for the 10 JASSM Antennae.

79.  On June 11, 2014, DaVinci sent a written quotation to Lewis, offering a 52% discount, for a final price of $600,000.  (**Exhibit "E"**)

80.  DaVinci received no response to the written Quotation on June 11, 2014.

81.  On September 30, 2014, at approximately 09:15 hours, Special Agent Joel S. Russell, Office of Special Investigations, accompanied by two Air Force Officers, arrived at DaVinci's business location in Van Nuys, California.

82.  Special Agent Russell presented DaVinci with a letter signed by Dept. of the Air Force, Office of Special Investigations, Special Agent in Charge, Michael Christmas, SA, DAFC, dated

23 Sept. 2014, purportedly authorizing the Air Force to take possession of the JASSM antennae. The letter specifically acknowledges that "delivery of the said items by Leonardo Parra and DaVinci Aircraft is made . . . without prejudice to any claims by Leonardo Parra and/or DaVinci Aircraft for their fair market value." (**Exhibit "F"**)

83.   On September 30, 2014, Plaintiff DaVinci surrendered the 10 JASSM Antennae to Special Agent Russell.  Special Agent Russell signed an acknowledgment of receipt for the 10 JASSM Antennae seized.  (**Exhibit "G"**)

84.   On the same date, Plaintiff DaVinci delivered to Special Agent Russell an Invoice for the full quoted price for the 10 JASSM Antennae, in the amount of $1,250,000.  (**Exhibit "H"**)

85.   Defendants, and each of them, intended to engage in conduct, and knew or had reason to know that the Plaintiff may infer from Defendants' conduct, Defendants assent to the terms of the quoted contract price, and therefore Defendants have by their conduct expressed a manifestation of their willingness and assent to be bound by the terms of the contract, thereby resulting in the formation of an implied yet enforceable contract.

86.   Plaintiff demands that Defendant United States of America compensate Plaintiff for the full quoted contract price of $1,250,000.

## FIFTH CLAIM FOR RELIEF

### CONVERSION

(Against All Defendants)

87.   Plaintiff re-alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 86, inclusive.

88.   Plaintiff is, and at all times relevant herein was, the legal owner of 10 JASSM Antennae, each with a fair market value of $125,000, for a total of $1,250.000.

89.   DaVinci's lawful possession of the JASSM Antennae is undisputed and was acknowledged by the Dept. of the Air Force, Office of Special Investigations, in the letter by Special Agent in Charge Michael Christmas, SA, DAFC, authorizing the Air Force to take possession of the antennae.  Special Agent Christmas' letter dated 23 Sept. 2014 provides that

1  "delivery of the said items by Leonardo Parra and DaVinci Aircraft is made under compulsion of

2  law pursuant to 18 USC 793(d) and is made without prejudice to any claims by Leonardo Parra

3  and/or DaVinci Aircraft for their fair market value." (**Exhibit "F"**).

4      90.  On September 30, 2014, pursuant to the demands and threats made by Special Agent

5  Russell to provide the antennae under compulsion of law  pursuant to 18 USC 793(d), including

6  the threat of criminal prosecution for failure to comply, Plaintiff DaVinci surrendered the 10

7  JASSM Antennae to Special Agent Russell.

8      91.  On September 30, 2014, Special Agent Russell signed a "Receipt For Items Taken

9  Under Compulsion" acknowledging his receipt for the 10 JASSM Antennae. (**Exhibit "G"**).

10      92.  Plaintiff DaVinci has demanded the immediate return of the 10 JASSM Antennae, or

11  the equivalent fair market value of the antennae, but to date Defendants, and each of them, have

12  failed to return or compensate Defendant for said property, and Plaintiff anticipates that

13  Defendants will continue to fail and refuse to do so.  A copy of DaVinci's Invoice to Eglin AFB

14  demanding payment for the 10 JASSM Antennae in the amount of $1,250,000 is attached as

15  **Exhibit "H"**.

16      93.  On March 12, 2015, Plaintiff's counsel, David M. Baum, sent a letter to the Dept. of the

17  Air Force, Office of Special Investigations, Eglin AFB, notifying the Air Force of Plaintiff's

18  claim under the FTCA, and requesting the filing of the attached Form 95, Administrative Claim

19  for Damages.  (**Exhibit "I"**)

20      94.  On or about August 18, 2015, Counsel for DaVinci submitted Plaintiff's Form 95,

21  Administrative Claim for Damages in the amount of $1,250,00, to the Dept. of the Army, Claims

22  Div., Office of Staff Judge Advocate, Ft. Stewart, GA. Joint Base Andrews, MD, with a copy to

23  the  Dept. of the Air Force, Office of Special Investigations, Eglin AFB, Florida.  (**Exhibit "K"**).

24      95.  Under the Laws of the United States, including the Federal Torts Claims Act, defendant

25  United States of America is liable for the above described actions of its agents, including but not

26  limited to Special Agents Christmas and  Russell, and Special Agent in Charge Lewis, as they

27  were each acting within the scope of their employment as officers and agents for the Defendant

28  United States.

96.  Plaintiff demands that Defendant United States compensate Plaintiff for its monetary loss and damages, calculated as the fair market value of the 10 JASSM Antennae at the time they were taken from DaVinci by the United States Air Force.

97.  Plaintiff will present evidence at trial showing the fair market value of the 10 JASSM Antennae in the amount of $1,250,000.

98.  As a direct and proximate result of Defendant's conversion, Plaintiff has suffered actual damages in the sum of $1,250,000, plus interest in accordance with applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for judgment against Defendants United States of America, Michael Christmas, and Rodney Lewis, as follows:

1.  On all Claims for Relief for compensatory damages against Defendants, jointly and severally, in an amount according to proof, but at least $1,250,000;

2.  On the Fifth Claim for Relief, alternatively, for damages and repossession of the converted property upon election of remedies at trial by Plaintiff;

3.  On all Causes of Action for punitive and exemplary damages;

2.  On all Causes of Action against Defendants for reasonable attorney fees and court costs, and additional costs of suit incurred herein; and

3.  For such other and further relief as the Court deems just and proper.

Respectfully Submitted,
BAUM LAW CORPORATION

Dated:  August 1, 2016

_____
David M. Baum, Esq.
Attorney for Plaintiff
DaVinci Aircraft, Inc.