1 | BAUM LAW CORPORATION
DAVID M. BAUM  (SBN 214571)
2 | ABRAHAM R. WAGNER (SBN 86682)
1875 Century Park East, Suite 700
3 | Los Angeles, California 90067
Telephone:  (310) 552-9100
4 | Facsimile:   (310) 552-9101
E-Mail: David@DBaumLaw.com
5 |
Attorneys for Plaintiff, DaVINCI AIRCRAFT, INC.
6 |

7 | UNITED STATES DISTRICT COURT FOR

8 | THE CENTRAL DISTRICT OF CALIFORNIA

9 | WESTERN DIVISION

10 |

11 | DaVINCI AIRCRAFT, INC.,                    )   File No.: 2:16-cv-05864 (CAS) (JCx)
                                                              )
12 |              Plaintiff,                             )   FIRST AMENDED COMPLAINT FOR
                                                              )   DAMAGES:
13 |        vs.                                           )
                                                              )        1)   CONVERSION;
14 | UNITED STATES OF AMERICA; MICHAEL )
CHRISTMAS, an individual; RODNEY    )        2)   SEIZURE OF PROPERTY IN
15 | LEWIS, an individual; JOEL S. RUSSELL, an )            VIOLATION OF FOURTH
individual, and DOES 1 Through 10, Inclusive, )            AMENDMENT (*BIVENS*
16 |                                                         )            ACTION) ;
              Defendants.                          )
17 |                                                         )        3)   DEPRIVATION OF
                                                              )            PROPERTY WITHOUT DUE
18 | _____ )            PROCESS IN VIOLATION
                                                                          OF THE FIFTH
19 |                                                                   AMENDMENT (*BIVENS*
                                                                          ACTION);
20 |
                                                                     4)   CONSPIRACY - ABUSE OF
21 |                                                                        PROCESS;

22 |                                                                   5)   FRAUD;

23 |                                                                   6)   NEGLIGENT
                                                                          MISREPRESENTATION.
24 |

25 |

26 |                                 DEMAND FOR JURY TRIAL

27 |

28 |

-- 1 --

1    Plaintiff, DaVinci Aircraft, Inc. ("DaVinci Aircraft" or "DaVinci") for its First Amended

2    Complaint against Defendants United States of America; Michael Christmas ("Christmas"),

3    Rodney Lewis ("Lewis"), Joel S. Russell ("Russell") and Does 1 through 10, inclusive

4    (collectively "Defendants"), as those claims form part of the same case or controversy, allege as

5    follows:

6

7                                      **NATURE OF THE CASE**

8         This action arises out of a criminal enterprise and conspiracy on the part of Defendants,

9    agents of the United States Air Force, to obtain 10 JASSM GPS Antennae without compensation

10   to the legal owner, Plaintiff, by fraudulently inducing and compelling Plaintiff, under threat of

11   criminal prosecution pursuant to 18 U.S.C. 793 (the Espionage Act), to surrender the JASSM

12   GPS Antennae.  Plaintiff purchased the (10) JASSM GPS Antennae (hereinafter collectively

13   referred to as the "JASSM Antennae") from BPB Surplus, who purchased them from Avatar

14   Unlimited as part of a bulk sale of surplus parts authorized by the Air Force for sale by Lockheed

15   Martin to Avatar Unlimited in or about March 2013.

16        The JASSM Antennae were first manufactured by Ball Aerospace under a U.S. Government

17   subcontract as unclassified hardware, not subject to any security restrictions under any security

18   program or otherwise controlled as classified hardware.  When sold as "surplus parts" they were

19   subsequently described by U.S. Government officials as "junk."  Documents first provided to this

20   court in January 2017 asserting that these JASSM Antennae were now classified hardware

21   subject to the controls of a special access program identified as SENIOR RODEO and contained

22   "embedded features . . . classified at the SECRET and SECRET//SPECIAL ACCESS

23   REQUIRED level" and that "their disclosure could provide adversarial nations with critically

24   protected information" represent a far belated and *post-hoc* effort and misuse of the security and

25   classification process to avoid legitimate procurement methods.

26        When Congress enacted 18 U.S.C. 783 it intended for it to be applied to actual cases of

27   espionage and serious misuse of national security information.  It was never intended to be used

28   an alternative to legitimate procurement methods or a means by which federal officials could act

under color of law to seize the legitimate property of the rightful owner when they were unable to conclude a contractual agreement.  Further Executive Order 13536 specifically bars the misuse of classification procedures such as took place here.

## JURISDICTION AND VENUE

1.   This action is brought pursuant to Federal Tort Claims Act, 28 U.S.C. §§ 2671, 1331 and 1346(b), and the Fourth and Fifth Amendments to the United States Constitution.

2.   On August 18, 2015, Plaintiff DaVinci Aircraft, Inc. submitted an Administrative Claim (Form 95) for the claim set forth below to the Dept. of the Air Force, Office of Special Investigations, Eglin AFB, Florida, and to the Dept. of the Army, Claims Div., Office of Staff Judge Advocate, Ft. Stewart, GA. Joint Base Andrews, MD. (See **Exhibits I, K**)

3.   Six months having elapsed since written notice of the claim was presented to the appropriate government agency, and the claim having not settled or denied, all conditions precedent to a Federal Tort Claims Act have been met. 28 U.S.C. §2675(a).

4.   Venue is properly within this District under 28 U.S.C. §1402(b) as the acts complained of occurred in the County of Los Angeles, Central District of California.

## PARTIES

5.   Plaintiff DaVinci Aircraft, Inc. (hereinafter "DaVinci") is and has been at all times relevant to this action a corporation organized and existing under and by virtue of the laws of the State of California, doing business in County of Los Angeles, State of California.

6.   Plaintiff DaVinci operates a business purchasing and selling new and serviceable (used) surplus parts in the aviation and aerospace industries.  These parts are regularly offered for sale by the manufacturer or intermediary wholesaler at a significant discount as part of a bulk or salvage sale.  DaVinci's business involves purchase of these surplus parts from manufacturers or distributors, and warehousing those parts until a sale can be made with a buyer in need of that particular part.

7.   Although this case does not involve the sale or export of Arms, DaVinci is in

compliance with ITAR (International Traffic in Arms Regulations), and it is DaVinci's policy to ensure compliance with U.S. Laws such as the Arms Export Control Act (AECA), International Traffic in Arms Regulations (ITAR Part 122), and Export Administration Regulations (EAR).

8.    The United States of America ("United States") is an appropriate defendant under the Federal Tort Claims Act ( 28 U.S.C. § 2671, et seq).

9.    Defendant Michael Christmas, SA, DAFC, ("Christmas") is and has been at all times relevant to this action a citizen of the United States, and is sued both as an individual defendant, as well as in his official capacity as Special Agent in Charge, Air Force Office of Special Investigations, Eglin AFB, Florida.

10.    Defendant Rodney Lewis, Capt. USAF, ("Lewis") is and has been at all times relevant to this action a citizen of the United States, and is sued both as an individual defendant, as well as in his official capacity as Contracting Officer for the Air Force, AFLCMC/EBJK, Eglin AFB, Florida.

11.    Defendant Joel S. Russell ("Russell") is and has been at all times relevant to this action a citizen of the United States, and is sued both as an individual defendant, as well as in his official capacity as an agent for the Air Force Office of Special Investigations, Eglin AFB, Florida.

12.    The true names and capacities, whether individual, corporate, associate, agent or otherwise of Defendants fictitiously named herein as Does 1 through 10, inclusive, are unknown to Plaintiff, who, therefore sues said defendants by such fictitious names.  Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated by such fictitious names was intentionally, negligently, recklessly and/or unlawfully responsible in some manner for the events and happenings referred to herein, and caused damages to Plaintiff as herein alleged. Plaintiff will seek leave to amend this First Amended Complaint to state the true names and capacities of the fictitiously named Defendants when they are ascertained.  Each of the fictitiously named Defendants is alleged to be in some way legally responsible for the damages suffered by Plaintiff.  The term "Defendants", as used herein, shall include each and all of said fictitiously named Defendants.

13.  Plaintiff is informed and believes and thereon alleges that at the time and places herein mentioned, Defendants UNITED STATES OF AMERICA, Michael Christmas, Rodney Lewis, Joel S. Russell, and Does 1 through 10, inclusive, were the agents and employees of each and every other Defendant, and of each other, and in doing all acts herein alleged, were acting within the course and scope of such agency and employment, with the permission, consent and knowledge of the other Defendants.

14.  Plaintiff is informed, believes and thereon alleges that at the times and places herein mentioned, Defendants Michael Christmas, Rodney Lewis, and Joel S. Russell, acted outside their official capacities utilizing security procedures in violation of Executive Order 13526 to avoid personal embarrassment and other actions not in keeping with U.S. Government policy and ethical standards.

### FACTS PERTINENT TO ALL CAUSES OF ACTION

15.  Plaintiff is informed, believes and thereupon alleges that on or about March 2013, Lockheed Martin, at the request of Kay Kooler, PLCO, Air Force Defense Contract Management Agency, offered for sale ten (10) JASSM GPS antennae ("JASSM Antennae") originally manufactured by Ball Aerospace.  As discussed *infra*, the JASSM Antennae were identified as "surplus," "obsolete" and "junk" and at no time as classified hardware that required protection for national security purposes.[1]

16.  Plaintiff is informed, believes and thereupon alleges that the JASSM Antennae did not require demilitarization and were authorized for public sale, excluding export.

17.  Plaintiff is informed, believes and thereupon alleges that the JASSM Antennae were originally manufactured by Ball Aerospace under a subcontract from Lockheed Martin which

---

[1] Note here the requirements of Executive Order 13526, Federal Register, Vol. 75, No. 2, which states, in part, Sec. 1.7. Classification Prohibitions and Limitations. (a) In no case shall information be classified, continue to be maintained as classified, or fail to be declassified in order to: (1) conceal violations of law, inefficiency, or administrative error; (2) prevent embarrassment to a person, organization, or agency; (3) restrain competition; or (4) prevent or delay the release of information that does not require protection in the interest of the national security.

was a prime contractor to the U.S. Air Force as UNCLASSIFIED hardware and not subject to the security requirement which would have applied to the manufacture of classified hardware, including the DoD 5220.22-M, "*National Industrial Security Program, Manual for Safeguarding Classified Information*", as well as any supplemental security guidance such as Special Access Program SENIOR RODEO Security Classification Guide (SCG) dated 31 Oct 2007 that might have been provided in connection with an Air Force Special Access Program SENIOR RODEO to the contractor and subcontractor.[2]

18.  Plaintiff is informed, believes and thereupon alleges that at no time did the Air Force Defense Contract Management Agency, or any other government official, indicate that the JASSM Antennae where or had ever been classified hardware subject to the security controls of the SENIOR RODEO Special Access Program, or any other program for the control of classified hardware.

19.  Plaintiff is informed, believes and thereupon alleges that at no time did the Air Force seek to impose either individual personnel security clearance requirements or handling requirements for classified hardware on Plaintiff, despite the fact that they were fully aware that the JASSM Antennae, subsequently alleged to be "classified hardware" were in the lawful possession of Plaintiff and not subject to any security controls for well over a year.[3]

_____

[2] It is the strict policy of the Department of Defense and the Air Force that when either classified data or hardware are to be produced under contract, the contract and any subcontract contain a DD Form 254 (Contract Security Specification) detailing both personnel as well as physical security and control requirements for any data or hardware generated under the contract.  Where a "special access" program (SAP) is involved, the security official designated for the SAP is authorized to impose additional requirements with respect to personnel clearances for those engaged in the project and handling of information and materials produced.  Such requirements are viewed by the government as essential to the safeguarding of national security information and materials.  Plaintiff is unaware that these mandatory security requirements were part of the initial procurement of the JASSM Antennae.

[3] Defendants' subsequent assertion that the JASSM Antennae were "classified hardware" simply makes a mockery of the Government's legitimate interest in the protection of national security information and hardware.  In reality, the subject JASSM Antennae were never manufacture or controlled as "classified hardware" and the Defendants' belated attempt to retroactively assert such national security requirements is nothing more than a sham and pretext to impose 18 USC 793 to avoid the contractual procurement of these goods.  Plaintiff is unable to identify any prior

20.  At no point did any Air Force of other U.S. Government security official contact Plaintiff about the JASSM Antennae that was then purportedly "classified hardware" in Plaintiff's possession.[4]

21.  Plaintiff is informed, believes and thereupon alleges that it is not a participant in the Department of Defense Industrial Security Program (ISP); that none of its employees hold at no U.S. Government security clearances; and that it has never maintained secure storage or other physical requirements that would apply to the handling of classified materials and hardware.

22.  Plaintiff is informed, believes and thereupon alleges that at no time did the Air Force seek to move the JASSM Antennae, purportedly classified, to appropriate secure facilities where they would be properly protected from access by adversarial nations.

23.  Plaintiff is informed, believes and thereupon alleges that Defendants have sought to retroactively categorize the JASSM Antennae as classified hardware for the express purpose of supporting their seizure under the auspices of 18 USC 793(f) after failing for over a year to acquire these items through legitimate procurement methods.  This would be a violation of Executive Order 13526.

24.  On or about July 31, 2013, Plaintiff DaVinci purchased the 10 JASSM Antennae from BPB Surplus for the sum of $3,000.  A true and correct copy of the purchase invoice from BPB Surplus to DaVinci is attached hereto as **Exhibit A**, and incorporated herein by reference.

25.  Plaintiff DaVinci advertised the 10 JASSM Antennae for sale on the surplus parts

---

case law of such "retroactive classification" to support Defendants' actions.

[4] In support of their initial Motion to Dismiss Defendants offer both the Declaration of Martin D. Hemmingsen (dated 10 January 2017) as well as the Memorandum from Lt. Col. Stephen M. Russell as "Exhibit A" (dated 22 July 2014) to Docket 17 stating that "embedded features of the JASSM GPS antennae" are "classified at the SECRET and SECRET//SPECIAL ACCESS REQUIRED level" and that their disclosure could provide adversarial nations with critically protected information."  Plaintiff greatly appreciates the need to protect such information, but this assertion flies in the fact of the fact that the Air Force sold these JASSM Antennae as "junk" and for over a year failed to inform Plaintiff of their belief that they were in fact "classified" and further made no effort whatsoever to control this material and information in accordance with the stated security guidance for Special Access Program SENIOR RODEO and the related Security Classification Guide (SCG) dated 31 Oct 2007.   Defendants entirely *post hoc* assertion of classification is, at best, highly suspect.

market using parts listing services, including NSN-Now and ILSmart.  The listings reflect an

asking price of $78,336.  Copies of the NSN-Now and ILSmart listings are attached hereto,

marked collectively as **Exhibit B**, and incorporated herein by reference.

26.  On September 17, 2013, at approximately 11:30 hours, Special Agent in Charge Laura

Voyatzis, accompanied by Special Agents Lenora Madison, John Drapalik, and David Givernero,

U.S. Air Force Office of Special Investigations, arrived at DaVinci's business office located in

Van Nuys, California.  Special Agent Voyatzis stated that their purpose was to inspect and

discuss the 10 JASSM Antennae in DaVinci's possession.  Special Agent Voyatzis and the others

that accompanied her did not state or indicated that the JASSM Antennae were in fact classified

hardware, or required security controls in accordance with any Government program.

27.  After inspection of the JASSM Antennae, Special Agent in Charge Voyatzis demanded

that DaVinci surrender all ten JASSM Antennae, without any legal warrant, court order, or

paperwork of any kind.  At no point did Special Agent Voyatzis indicate that the JASSM

Antennae were in fact classified hardware in need of appropriate security controls to prevent

national security information from falling into the hands of potential adversaries.

28.  Plaintiff DaVinci's attorney Bob Ross was present and, upon advice of counsel,

DaVinci informed the Special Agents that they had no legal grounds for taking the antennae, and

DaVinci refused to surrender the JASSM Antennae to the Special Agents.  At no point did the

Special Agents indicate that the JASSM Antennae were in fact classified hardware in need of

appropriate security controls to prevent national security information from falling into the hands

of potential adversaries.

29.  At the same time and place, the Special Agents asked DaVinci for a quotation of

purchase price, and were informed that the asking price for the JASSM Antennae was $125,000

each.  The Special Agents left without taking further action.

30.  On April 21, 2014, responding to a request from Eglin AFB, DaVinci provided a price

Quotation for sale of the 10 JASSM Antennae in the amount of $75,000 each.   A copy of the

Quotation from DaVinci dated April 21, 2014 is attached hereto as **Exhibit C** and incorporated

herein by reference.

31.  On June 2, 2014, at approximately 2:37 p.m., Defendant Rodney Lewis, Capt., USAF, in his capacity as Contracting Officer for the United States Air Force, sent an email thanking Mr. Niemans in the sales department at DaVinci for submitting the Quotation for 10 JASSM GPS Antennas dated Apr. 21, 2014, stating that he was interested in discussing the matter, and requesting a return call from DaVinci.

32.  On June 2, 2014, at approximately 4:52 p.m., Defendant Lewis sent another email to DaVinci extending an offer to purchase the 10 JASSM Antennae in DaVinci's possession for the sum of $7,359.  Lewis' email states that his offer price is based upon the price DaVinci originally paid for the purchase of the lot of military equipment from DCMA.

33.  On June 4, 2014, at 2:37 p.m., Defendant Lewis sent a follow up email to Leonardo Parra, owner of DaVinci, stating that Lewis had been assigned to purchase the JASSM GPS antennae from DaVinci.  At approximately 3:44 p.m., DaVinci responded by email to Defendant Lewis rejecting his offer, and stating that DaVinci's asking price for the JASSM Antennae of $75,000 was a 40% discount from original price.  At approximately 5:42 p.m., Defendant Lewis replied by email that "the government was unwilling and unable to accept that price."  Defendant Lewis' email states "I encourage you to propose a more reasonable price so we both can benefit." Copies of emails sent on June 2 and June 4, 2014 are attached hereto, marked collectively as **Exhibit D** and incorporated herein by reference.

34.  On or about June 11, 2014, DaVinci received a telephone call from Capt. Rodney Lewis, Department of the Air Force.  Capt. Lewis stated that the Air Force was in urgent need of the JASSM Antennae and asked DaVinci for a price quotation.  DaVinci responded with a verbal price quotation of $125,000 each, for the 10 JASSM Antennae owned by DaVinci.  Capt. Lewis replied that the price quoted by DaVinci was too high, and that the Antennae were not worth that amount of money as they were "no good."  Capt. Lewis' statement that the JASSM Antennae were "no good" does not reflect a belief that they were classified hardware in need of protection from adversary nations.  To the contrary, it largely reflects a need on the part of Defendants for replacement parts, and not any need to protect classified information from potential adversaries.

35.  Thereafter, also on June 11, 2014, Capt. Lewis sent an email to DaVinci requesting a

1    price quotation for the 10 JASSM Antennae.

2       36.   On June 11, 2014, in response to Capt. Lewis' email request, DaVinci prepared and sent

3    a written Quotation to Eglin AFB, listing the full purchase price for the 10 JASSM Antennae at

4    $125,000,000, and offering a 52% discount for a final price of $600,000.  A true and correct copy

5    of the Quotation dated June 11, 2014 is attached hereto as **Exhibit E** and incorporated herein by

6    this reference.

7       37.   DaVinci received no response to the written Quotation.

8       38.   On September 30, 2014, at approximately 09:15 hours, Special Agent Joel S. Russell,

9    Office of Special Investigations, accompanied by two Air Force Officers, arrived at DaVinci's

10    business location in Van Nuys, California, and demanded that DaVinci surrender the 10 JASSM

11    Antennae, under compulsion of law.  Special Agent Russell stated that the Air Force was

12    authorized to and intended to take possession of 10 JASSM GPS Antennae.  At no point was

13    there any indication that the 10 JASSM GPS Antennae were classified hardware.

14       39.   On September 30, 2014, at the same time and place, Special Agent Russell presented

15    DaVinci with a letter signed by Dept. of the Air Force, Office of Special Investigations, Special

16    Agent in Charge, Michael Christmas, SA, DAFC, dated 23 Sept. 2014, purportedly authorizing

17    the Air Force to take possession of the JASSM Antennae.  The letter specifically acknowledges

18    that "delivery of the said items by Leonardo Parra and DaVinci Aircraft is made under

19    compulsion of law pursuant to 18 USC 793(d) and is made without prejudice to any claims by

20    Leonardo Parra and/or DaVinci Aircraft for their fair market value."  This letter makes no

21    reference to any belief that these were classified hardware subject to the controls of the as Special

22    Access Program SENIOR RODEO Security Classification Guide (SCG) dated 31 Oct 2007.  A

23    true and correct copy of this letter is attached hereto as **Exhibit F**, and incorporated herein by

24    reference.

25       40.   On September 30, 2014, pursuant to the demands and threats made by Special Agent

26    Russell to provide the antennae under compulsion of law pursuant to 18 USC 793 (d), including

27    the threat of criminal prosecution for failure to comply, Plaintiff DaVinci surrendered the 10

28    JASSM Antennae to Special Agent Russell.  Agent Russell signed an acknowledgment of receipt

for the 10 JASSM Antennae seized.  A true and correct copy of the "Receipt For Items Taken Under Compulsion" is attached hereto as **Exhibit G** and incorporated herein by reference.  These JASSM Antenna where thus "taken by compulsion" and not simply "detained."[5]

41.  On or about September 30, 2014, Plaintiff DaVinci delivered to Special Agent Russell an Invoice for the seized JASSM Antennae in the amount of $1,250,000, the full asking price originally quoted, without discount.  A true and correct copy of the Invoice is attached hereto as **Exhibit H**, and incorporated herein by reference.

42.  On March 12, 2015, Plaintiff's counsel, David M. Baum, sent a letter to the Dept. of the Air Force, Office of Special Investigations, Eglin AFB, notifying the Air Force of Plaintiff's claim under the FTCA, and requesting the filing of the attached Form 95, Administrative Claim for Damages. A true and correct copy of Mr. Baum's letter is attached hereto as **Exhibit I** and incorporated herein by reference.

43.  On or about July 20, 2015, Plaintiff's counsel received a letter dated July 14, 2015,

---

[5] Plaintiff here notes the distinction of items subject to "detention" and avoids the issue under Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub.L. No. 106-185, § 3, 114 Stat. 202, 211, where Congress added paragraphs (1)-(4) to 28 U.S.C. § 2680(c).  Those new paragraphs provide that the waiver of sovereign immunity in 28 U.S.C. § 1346(b) applies to damage to property while in the possession of certain government employees, including law enforcement officers, if: "the property was *seized for the purpose of forfeiture* under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense" *Foster v. United States*, 522 F.3d 1071 (2008).  This applies only to property seized solely for the purpose of forfeiture.  This exception, referred to as the "detention of goods" exception, *see, e.g., Cervantes v. United States,* 330 F.3d 1186, 1189 (9th Cir.2003).  For example, in *Kosak v. United States,* 465 U.S. 848, 854, 104 S. Ct. 1519, 79 L. Ed. 2d 860 (1984), the Supreme Court held that the detention of goods exception applies not only to intentional conduct by government employees, but also to "any claim `arising out of' the detention of goods, . . . includ[ing] a claim resulting from negligent handling or storage of detained property."  The Supreme Court recently rejected an argument that the detention of goods exception is limited to law enforcement officers who are involved in customs or excise activities. *Ali v. Fed. Bureau of Prisons*, ___ U.S. ___, 128 S. Ct. 831, 841, 169 L. Ed. 2d 680 (2008).  The Court held that the FTCA "maintain[s] sovereign immunity for the *entire universe of claims* against law enforcement officers . . . `arising in respect of' the `detention' of property." *Id.* (emphasis added); *accord Bramwell v. U.S. Bureau of Prisons,* 348 F.3d 804, 808 (9th Cir.2003) (same); *Lane v. Pena,* 518 U.S. 187, 192, 116 S. Ct. 2092, 135 L. Ed. 2d 486 (1996); *United States v. 87 Skyline Terrace,* 26 F.3d 923, 929 (9th Cir.1994).

from Ms. Sipp, Tort Litigation Civil Litigator, Claims Division, Office of the Staff Just

Advocate, Dept. of the Army, Ft. Stewart, Georgia, notifying Plaintiff that the Form 95 claim

requires an original signature of complainant, and requests that Plaintiff send the completed

claim Form 95 in proper form to their office to process the claim.

44.   Pursuant to the letter from Ms. Sipp, on or about August 18, 2015, DaVinci submitted

Plaintiff's Form 95, Administrative Claim for Damages in the amount of $1,250,00, with

attachments, to the Dept. of the Army, Claims Div., Office of Staff Judge Advocate, Ft. Stewart,

GA.  A copy was also sent to the Dept. of the Air Force, Office of Special Investigations, Eglin

AFB, Florida.  A true and correct copy of Mr. Baum's cover letter with enclosed Form 95 and

Authority to File Claim are attached hereto, marked collectively as **Exhibit J** and incorporated

herein by reference.

45.   Attached hereto as **Exhibit K** and incorporated herein by reference, is a copy of a letter

dated August 20, 2015, from Dept. of the Army, Office of the Staff Judge Advocate,

acknowledging their receipt of DaVinci's Federal Tort Claim against the United States

Government and enclosing a copy of DaVinci's filed and date stamped Form 95 Claim for

Damages).

## FIRST CLAIM FOR RELIEF

### CONVERSION

(Against All Defendants)

46.   Plaintiff re-alleges and incorporates herein by this reference every allegation set forth in

Paragraphs 1 through 45, inclusive.

47.   Plaintiff is, and at all times relevant to this First Amended Complaint was, the legal

owner of 10 JASSM Antennae, each with a fair market value of $125,000, for a total of

$1,250,000. Special Agent in Charge Michael Christmas, SA, DAFC, acknowledged DaVinci's

lawful possession of the antennae.

48.   Defendant Christmas was aware that 18 U.S.C. § 793(d) did not authorize the seizure of

items like the 10 JASSM Antennae. The antennae were never classified nor subject to restricted

access, such as requiring security clearance or other handling requirements. There is no indication that the antennae ever qualified as valuable or important national security hardware or appliances. Air Force Officers identified the antennae as "junk."

49.  Defendants' representation to Plaintiff DaVinci that 18 U.S.C. § 793(d) permitted the lawful seizure of the antennae was calculated to induce DaVinci to surrender the antennae even though Defendants knew that the law did not authorize the seizure of non-classified, unsecured hardware such as the 10 JASSM Antennae.  Defendants post-hoc claims that the JASSM Antennae were classified to enable their seizure under the auspices of 18 U.S.C. §793(d) is a gross misuse of classification authority for other than legitimate national security purposes and a violation of Executive Order 13526 which has the force of law.

50.  On September 30, 2014, pursuant to the demands and threats made by Special Agent Russell to provide the antennae under compulsion of law pursuant to 18 U.S.C. § 793(d), including the threat of criminal prosecution for failure to comply, Plaintiff DaVinci surrendered the 10 JASSM Antennae to Special Agent Russell and two other Air Force officers.

51.  On September 30, 2014, Special Agent Russell signed a "Receipt For Items Taken Under Compulsion" acknowledging his receipt for the 10 JASSM Antennae.

52.  Because Defendants were aware that 18 U.S.C. § 793(d) did not permit the lawful seizure of the 10 JASSM Antennae, the property was seized for the sole purpose of forfeiture. No other justification for the seizure was offered, and no compensation was provided, indicating that forfeiture was the sole purpose of the seizure.

53.  Plaintiff DaVinci never forfeited its interest in the property and has consistently pursued compensation for the seized property. On March 12, 2015, Plaintiff's counsel, David M. Baum, sent a letter to the Department of the Air Force, Office of Special Investigations, Eglin AFB, notifying the Air Force of Plaintiff's claim under the FTCA, and requesting the filing of the attached Form 95, Administrative Claim for Damages.

54.  Defendants have failed to remit or mitigate the interest of Plaintiff DaVinci. Defendants have offered no compensation of any kind to DaVinci. Plaintiff DaVinci has demanded the immediate return of the 10 JASSM Antennae, or the equivalent fair market value of the antennae,

1   but to date Defendants have failed to return or compensate Defendant for said property, and

2   Plaintiff anticipates that Defendants will continue to fail and refuse to do so.

3       55.   Plaintiff DaVinci was never convicted of any crime for which its interest in the 10

4   JASSM Antennae was subject to forfeiture under a Federal criminal forfeiture law.

5       56.   Under the Laws of the United States, including the Federal Torts Claims Act, Defendant

6   United States of America is liable for the above described actions of its agents, including but not

7   limited to Special Agents Christmas and Russell, and Special Agent in Charge Lewis, as they

8   were each acting within the scope of their employment as officers and agents for the Defendant

9   United States.

10      57.   Plaintiff demands that Defendant United States compensate Plaintiff for its monetary

11  loss and damages, calculated as the fair market value of the 10 JASSM Antennae at the time they

12  were taken from DaVinci by the United States Air Force.

13      58.   Plaintiff will present evidence at trial showing the fair market value of the 10 JASSM

14  Antennae in the amount of $1,250,000.

15      59.   As a direct and proximate result of Defendant's conversion, Plaintiff has suffered actual

16  damages in the sum of $1,250,000, plus interest in accordance with applicable law.

17

18                          **SECOND CLAIM FOR RELIEF**

19                          **SEIZURE OF PROPERTY IN VIOLATION**

20                          **OF THE FOURTH AMENDMENT**

21                          [*Bivens* Action]

22                          (Against All Defendants)

23      60.   Plaintiff re-alleges and incorporates herein by this reference every allegation set forth in

24  Paragraphs 1 through 59, inclusive.

25      61.   In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388

26  (1971), the Supreme Court created a cause of action under the Fourth Amendment for damages.

27  *Bivens* actions have since been expanded beyond the Fourth Amendment context of unreasonable

28  searches or searches without a warrant. When a plaintiff demonstrates an injury caused by federal

1  agents in violation of plaintiff's constitutional rights, plaintiff is entitled to damages.

2    62.  The Fourth Amendment secures the right of the people against unreasonable seizures

3  and seizures of property without a warrant supported by probable cause.

4    63.  Plaintiff is, and at all times relevant to this First Amended Complaint was, the legal

5  owner of 10 JASSM Antennae, each with a fair market value of $125,000, for a total of

6  $1,250,000. Special Agent in Charge Michael Christmas, SA, DAFC, acknowledged DaVinci's

7  lawful possession of the antennae.

8    64.  Michael Christmas, Rodney Lewis, Joel Russell, and Does 1-10, were, at all times

9  relevant to his First Amended Complaint, acting under color of federal law. They purported to act

10  under the authority of 18 U.S.C. § 793(d) and as agents of the United States Air Force.

11    65.  On September 13, 2014, Special Agent Joel S. Russell, Office of Special Investigations,

12  and two other Air Force officers demanded the DaVinci surrender the 10 JASSM Antennae.

13  Special Agent Russell presented DaVinci with a letter signed by Defendant Christmas

14  authorizing the seizure of the antennae.

15    66.  On September 13, 2014, Special Agent Russell threatened Plaintiff DaVinci with

16  criminal prosecution for failure to comply with the order to surrender the antennae. Special

17  Agent Russell and the two other Air Force officers proceeded to seize the antennae.

18    67.  Had Plaintiff known the actual facts, it would not have agreed to surrender the 10

19  JASSM Antennae.

20    68.  The seizure of the 10 JASSM Antennae under threat of prosecution was a violation of

21  Plaintiff DaVinci's Fourth Amendment right against unreasonable seizures of property. Plaintiff

22  DaVinci would not have surrendered the property to Special Agent Russell and the two unnamed

23  Air Force officers if not for the wrongful inducement and coercion the Officers affected through

24  their misrepresentation of their lawful authority to seize the antennae.

25    69.  As to this claim for relief, Defendants are sued in their individual capacities.

26  ///

27  ///

28

**THIRD CLAIM FOR RELIEF**

**DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS**

**IN VIOLATION OF THE FIFTH AMENDMENT**

[*Bivens* Action]

(Against All Defendants)

70.  Plaintiff re-alleges and incorporates herein by this reference every allegation set forth in the preceding Paragraphs 1 through 69, inclusive.

71.  The Fifth Amendment to the Constitution of the United States prohibits federal officials from depriving any person of property without due process of law.

72.  As set forth above, from approximately September 2013 through October 2014, Defendants made materially misleading statements in order to induce Plaintiff DaVinci to surrender the 10 JASSM Antennae in DaVinci's possession. These misrepresentations included statements regarding the monetary value of the antennae, the importance of the antennae for national security purposes and, most significantly, the meaning and scope of 18 U.S.C. § 793(d). Because Defendants were acting under color of law, Plaintiff DaVinci believed and relied upon these false statements.

73.  Had Defendants not misled DaVinci regarding the possibility of criminal prosecution for failure to comply with Defendants' demand that DaVinci surrender the antennae, Plaintiff DaVinci would not have given up its property to Defendants.

74.  18 U.S.C. § 793(d) did not provide a lawful ground for seizing the 10 JASSM Antennae from Plaintiff DaVinci. Defendants did not provide an alternative justification for the seizure. Therefore, Defendants deprived Plaintiff DaVinci of property without a lawful basis for doing so.

75.  Defendants also failed to afford DaVinci its due process rights in challenging the deprivation of property. Defendants failed to provide an alternative means of obtaining compensation for the property they wrongfully seized. Plaintiff's counsel, in seeking compensation, filed the appropriate documents and complied with the relevant requests of the Department of the Army. This process did not yield any results. Plaintiff was not permitted a hearing nor afforded notice or an explanation of why the administrative claim for damages was

denied.

76.  As to this claim for relief, Defendants are sued in their individual capacities.

**FOURTH CLAIM FOR RELIEF**

**CONSPIRACY - ABUSE OF PROCESS**

(Against All Defendants)

77.  Plaintiff re-alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 76, inclusive.

78.  As set forth above, from approximately September 2013 through October 2014, Defendants, and each of them, conspired to fraudulently and wrongfully induce and coerce Plaintiff to surrender the 10 JASSM Antennae to the Air Force, and to dispossess Plaintiff of its legal property without due process and without just and proper compensation to Plaintiff.

79.  Plaintiff is informed, believes and thereupon alleges that Defendants United States, Christmas, Lewis, Russell, Does 1-10, and each of them, knowingly conspired to induce Plaintiff to surrender its property without due process, and without just and proper compensation to Plaintiff, by falsely alleging, inter alia, that the government was authorized to seize the items under compulsion of law pursuant to 18 U.S.C. 793(d).

80.  Defendants United States, Christmas, Lewis, Russell, Does 1-10, and each of them, in furtherance of the conspiracy, knowingly prepared documents and made false and fraudulent representations to Plaintiff that the government was authorized to take possession of the JASSM Antennae under compulsion of law pursuant to 18 USC 793(d).

81.  Defendants United States, Christmas, Lewis, Russell, Does 1-10, and each of them, in furtherance of the conspiracy,  knowingly made false and fraudulent representations to Plaintiff that the JASSM Antennae contained  "information relating to the national defense" and also that the JASSM Antennae were "no good" and not worth the price DaVinci was asking.

82.  Plaintiff DaVinci reasonably relied upon the false representations made by Defendants.

83.  On or about September 30, 2014, in reliance upon on the false representations of Defendants, and each of them, and under the perceived threat of criminal prosecution pursuant to

1    18 USC 793(D), Plaintiff surrendered the 10 JASSM Antennae in its possession to Special Agent

2    Russell.

3        84.   When Defendants United States, Christmas, Lewis, Russell, Does 1-10, and each of

4    them, conspired to commit the acts alleged herein, Defendants knew the acts to be wrongful,

5    including false representations, with no reasonable ground for believing them to be true, and

6    committed the acts, herein complained of, with the intent to defraud and deceive Plaintiff, all to

7    Plaintiff's detriment and harm.

8        85.   At all times relevant to this action, Plaintiff was ignorant of the falsity of Defendants'

9    representations and believed them to be true.  Plaintiff justifiably relied on the representations

10    and statements made by the Defendants, and each of them, in surrendering, under the perceived

11    threat of criminal prosecution, the 10 JASSM Antennae in its possession.

12        86.   Had Plaintiff known the actual facts it would not have agreed to surrender the 10

13    JASSM Antennae.

14        87.   As a direct and proximate result of Defendants, and each of their conduct, as here above

15    alleged, Plaintiff has been generally and specially damaged in a sum in excess of $1,250,000,

16    plus interest in accordance with applicable law.

17        88.   The aforementioned conduct of Defendants, and each of them, was intentional and done

18    for the purpose of depriving Plaintiff of property and/or legal rights or otherwise causing injury,

19    and was done with malice and/or in conscious disregard of Plaintiff's rights, and with the intent

20    to defraud, injure and damage Plaintiff, so as to justify an award of exemplary and punitive

21    damages.

22

23                        **FIFTH CLAIM FOR RELIEF**

24                              **FRAUD**

25                        (Against All Defendants)

26        89.   Plaintiff re-alleges and incorporates herein by this reference each and every allegation

27    set forth in Paragraphs 1 through 88, inclusive.

28        90.   As set forth above, at all times relevant to this action, and specifically from

1  approximately September 2013 through October, 2014, Defendants, and each of them,

2  knowingly made false representations of material facts to Plaintiff with the specific intent to

3  induce Plaintiff to surrender its property to Defendants without proper compensation to Plaintiff.

4      91.  Defendant United States, Christmas, and Lewis, Russell, Does 1 through 10, and each

5  of them, knowingly made false and fraudulent representations of material facts to Plaintiff,

6  including but not limited to, that the Air Force was authorized to take possession of the JASSM

7  Antennae under compulsion of law pursuant to 18 USC 793(d), that the items to be seized

8  contained "information relating to the national defense", and that the JASSM Antennae were "no

9  good" and not worth the price DaVinci was asking.

10     92.  When Defendants, and each of them, made the representations and committed the acts

11 herein alleged, Defendants knew the statements and representations to be false, with no

12 reasonable ground for believing them to be true, and committed the acts herein complained of

13 with the intent to defraud and deceive Plaintiffs and with the intent to induce Plaintiffs to act in a

14 particular manner, in which Plaintiff did, all to Plaintiffs' detriment and harm.

15     93.  Plaintiff, at the time these representations were made by Defendants and at the time

16 Plaintiff took the actions herein alleged, was ignorant of the falsity of Defendants'

17 representations and believed them to be true.  Plaintiff justifiably and reasonably relied on

18 Defendants' representations, and was thereby induced to, and on or about September 30, 2014,

19 did surrender and deliver to Defendants the 10 JASSM Antennae in DaVinci's possession.

20     94.  Had Plaintiff known the actual and true facts it would not have agreed to surrender the

21 10 JASSM Antennae to Defendants.

22     95.  DaVinci's lawful possession of the JASSM Antennae is undisputed and was

23 acknowledged in writing by the Dept. of the Air Force, Office of Special Investigations, Special

24 Agent in Charge Michael Christmas, SA, DAFC, in his letter authorizing the Air Force to take

25 possession of the antennae.  The letter dated 23 Sept. 2014 provides that "delivery of the said

26 items by Leonardo Parra and DaVinci Aircraft is made under compulsion of law pursuant to 18

27 USC 793(d) and is made without prejudice to any claims by Leonardo Parra and/or DaVinci

28 Aircraft for their fair market value." (See **Exhibit "F"**)

96.   As a direct and proximate result, Plaintiff has been generally and specially damaged in a sum in excess of $1,250,000, plus interest in accordance with applicable law.

97.   The aforementioned conduct of Defendants, and each of them, was intentional and done for the purpose of depriving Plaintiff of property and/or legal rights or otherwise causing injury, and was done with malice and/or in conscious disregard of Plaintiff's rights, and with the intent to defraud, injure and damage Plaintiff, so as to justify an award of exemplary and punitive damages.

## SIXTH CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION

(Against All Defendants)

98.   Plaintiff re-alleges and incorporates herein by this reference each and every allegation set forth in Paragraphs 1 through 97, inclusive.

99.   Defendants United States, Christmas, Lewis, Russell, Does 1 through 10, inclusive, and each of them, falsely represented to Plaintiff that the government was "authorized to take possession of the JASSM Antennae under compulsion of law pursuant to 18 USC 793(d)" and that the items contained "information relating to the national defense."  Defendants, and each of them, also falsely represented to Plaintiff that the JASSM Antennae were "no good" and not worth the price DaVinci was asking.

100.   When Defendants, and each of them, made the representations and committed the acts here above alleged, Defendants had no reasonable ground for believing them to be true, and committed the acts herein complained of with wanton and reckless disregard for the rights of Plaintiff, and intending to induce Plaintiff to act in a particular manner, in which Plaintiff did, all to Plaintiff's detriment and harm.

101.   At the time Defendants United States, Christmas, Lewis, Russell, Does 1 through 10, inclusive, and each of them, made the aforementioned representations and at the time plaintiff took the actions herein alleged, Plaintiff was ignorant of the falsity of defendants' representations and believed them to be true.

102.  Plaintiff DaVinci justifiably and reasonably relied upon the false representations made by Defendants, and each of them, and based thereon, on September 30, 2014, Plaintiff DaVinci delivered to Special Agent Russell, under compulsion of law, the 10 JASSM Antennae in its possession.

103.  Had Plaintiff known the actual facts it would not have agreed to surrender the 10 JASSM Antennae.

104.  As a direct and proximate result of Defendants', and each of their, negligent misrepresentations and deceit, as here above alleged, Plaintiff has been generally and specially damaged in a sum in excess of $1,250,000, plus interest in accordance with applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for judgment against Defendants United States of America, Michael Christmas, Rodney Lewis and Joel Russell, as follows:

1.  On all Claims for Relief for compensatory damages against Defendants, jointly and severally, in an amount according to proof, but at least $1,250,000;

2.  On the First Claim for Relief, alternatively, for damages and repossession of the converted property upon election of remedies at trial by Plaintiff;

3.  On all Claims for Relief for punitive and exemplary damages;

2.  On all Claims for Relief for reasonable attorney fees and court costs, and additional costs of suit incurred herein; and

3.  For such other and further relief as the Court deems just and proper.

Respectfully Submitted,
BAUM LAW CORPORATION

Dated:  February 21, 2017

*David M. Baum*

David M. Baum, Esq.
Attorney for Plaintiff
DaVinci Aircraft, Inc.